ADAM R.F. GUSTAFSON, Principal Deputy Assistant Attorney General
NICOLE M. SMITH, Assistant Section Chief
CAITLYN F. COOK, Trial Attorney (MD Bar No. 2112140244)
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 598-0275
Email: Caitlyn.cook@usdoj.gov
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 7:24-CV-00233-DC-RCG |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF THE | ) | **JOINT MOTION TO** |
| INTERIOR, ET AL., | ) | **ENTER STIPULATED** |
| | ) | **SETTLEMENT AGREEMENT** |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

Plaintiff, the State of Texas, and Defendants— the U.S. Department of the Interior, the U.S. Fish and Wildlife Service, Doug Burgum, in his official capacity as Secretary of the Interior, and Brian Nesvik, in his official capacity as Director of the U.S. Fish and Wildlife Service—hereby jointly move the Court to enter the attached Stipulated Settlement Agreement ("Agreement") as an order of the Court. Plaintiff's Complaint, Dkt. No. 1, alleges that Defendants violated the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA") when the Service promulgated a final rule listing the dunes sagebrush lizard as an endangered species. *See* Final Rule, 89 Fed. Reg. 43748 (May 20, 2024). The Agreement would fully resolve this case without

further litigation by vacating and remanding the Final Rule to the Service for further consideration, and dismissing Plaintiff's claims with prejudice.

In support of this Motion, Defendants submit the attached Declaration of Leston Jacks, the Acting Regional Director for the Service's Southwest Region. As shown below, the Agreement is fair, adequate, and reasonable. Accordingly, the Court should grant this motion and enter the Agreement as an order.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The dunes sagebrush lizard is found only in shinnery oak dunelands and shrublands in New Mexico and Texas. In May 2024, the Service promulgated the Final Rule determining that the dunes sagebrush lizard is an endangered species under the ESA based on the primary threats of habitat loss, fragmentation, and degradation. Final Rule, 89 Fed. Reg. 43748 (May 20, 2024). Foundational to this determination was the Service's conclusion that habitat loss should be considered effectively permanent in part because habitat restoration was not feasible. *See id.* at 43755 (loss is effectively permanent because "the physical form of the landscape remains altered" even after removing oil and gas infrastructure); *id.* at 43761 (habitat loss "may be irreversible"); *id.* at 43766 (habitat "cannot currently be restored").

The Service has since re-evaluated its determination and concluded that it improperly assumed that habitat restoration could not occur. The assumption discounted experimental efforts that showed promise for habitat restoration, resulting in the potentially inaccurate assessment of conservation efforts that may have impacted the Service's conclusions as to whether the dunes sagebrush lizard meets the statutory definition of an endangered species.

JOINT MOTION TO ENTER STIPULATED SETTLEMENT AGREEMENT

It is well established that, under the APA, a reviewing court may "set aside" an agency rule when the promulgating agency "failed to consider an important aspect of the problem." *Motor Vehicles Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 42-43 (1983) (a reviewing court must consider whether agency rule was based on consideration of the "relevant factors"); 5 U.S.C. § 706(2) (a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to violate the APA). In the Fifth Circuit, setting aside the deficient rule through vacatur is the default remedy. *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802, 815 (5th Cir. 2024) (citing *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (*en banc*), *aff'd*, 602 U.S. 406 (2024)). The Parties have agreed to a settlement that would vacate and remand the Final Rule to the Service for further consideration. Remand would allow the Service to correct the potentially inaccurate assessment of conservation efforts without further litigation. The Parties request the Court's approval of the settlement as a fair, adequate, and reasonable resolution of this action considering the serious and fundamental nature of the error underlying the Final Rule.

## II.    STATUTORY BACKGROUND

### A. Endangered Species Act

Congress enacted the ESA, 16 U.S.C. §§ 1531-1544, "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." *Id.* § 1531(b). Section 4 of the ESA requires the Secretary of the Interior[1] ("Secretary") to determine whether any species should be listed as endangered or threatened. *Id*. § 1533(a). An "endangered species" is a species "which is in danger of extinction throughout all or a significant

---

[1] The Secretaries of the Interior and Commerce share responsibility for listing species under the ESA. 16 U.S.C. § 1532(15). The Secretary of the Interior, acting through the Service, is generally responsible for all terrestrial and freshwater species, including the dunes sagebrush lizard.

JOINT MOTION TO ENTER STIPULATED SETTLEMENT AGREEMENT

portion of its range." *Id.* § 1532(6). A "threatened species" is a species "which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20). The Secretary determines whether to list a species as threatened or endangered based on five statutory factors, including "the present or threatened destruction, modification, or curtailment of its habitat or range[.]" *Id*. § 1533(a)(1). The determination must be made "solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State . . . to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction." *Id*. § 1533(b)(1)(A).

A species may be listed as an endangered species or threatened species under the ESA either on the initiative of the Service or because of a petition submitted by an "interested person." *Id.* § 1533(b)(3)(A). If upon review, the Service finds that a petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted," the Service must initiate a species status review and make a finding within 12 months after receiving the petition whether the petitioned action is warranted, not warranted, or warranted but precluded from immediate action by other pending proposals ("12-month finding"). *Id.* § 1533(b)(3)(A)-(B). If the Service determines that listing a species as an endangered species or threatened species is warranted, the Service must publish in the Federal Register notice of the determination in a proposed rule and open a public comment period. *Id.* § 1533(b)(3)(B)(ii); 50 C.F.R. § 424.16(c). Within one year of the proposed rule, the Service must publish in the Federal Register a final rule implementing the determination, notice that it is extending the one-year period, or notice that the proposed rule is being withdrawn. 16 U.S.C. § 1533(b)(6)(A)(i).

### B.  Administrative Procedure Act

The Administrative Procedure Act provides that a person adversely affected or aggrieved by an "agency action" may obtain judicial review of the agency action. 5 U.S.C. § 702. The court may "hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia,* "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or " without observance of procedure required by law." *Id.* § 706(2)(A), (D).

## III.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Final Rule and the Underlying Evaluation of Habitat Restoration

The dunes sagebrush lizard (*Sceloporus arenicolus*) is a species of spiny lizard found only in southeastern New Mexico and west Texas. Final Rule, 89 Fed. Reg. at 43748, 43758. Its habitat is found in shinnery oak dunelands and shrublands. *Id.* at 43758. On July 23, 2023—in response to a petition to list the species as endangered or threatened and to designate critical habitat for it— the Service published a proposed rule to list the species as endangered. Proposed Rule, 88 Fed. Reg. 42661, 42663 (July 3, 2023). The Service finalized its listing determination in May 2024 when the agency published the Final Rule, listing the dunes sagebrush lizard as endangered under the ESA. Final Rule, 89 Fed. Reg. 43748 (May 20, 2024). The Service determined that the dunes sagebrush lizard met the statutory definition of an "endangered species" based on threats to the species from "(1) [h]abitat loss, fragmentation, and degradation from development by the oil and gas and the frac sand . . . mining industries; and (2) climate change and climate conditions, both resulting in hotter, more arid conditions with an increased frequency and greater intensity of drought throughout the species' geographic range." *Id.* at 43748.

Habitat loss, fragmentation, and degradation were the primary risks to the species. *Id.* at 43760-62. Thus, the Service relied predominantly on factor A—"the present or threatened

destruction, modification, or curtailment of [] habitat or range," 16 U.S.C. § 1533(a)(1)(A)—to support the agency's listing determination. *Id.* at 43765-66; *see also id.* at 43755 (habitat loss was "the greatest threat to the species"). The Service also assessed existing regulatory mechanisms and state efforts to protect the dunes sagebrush lizard and its habitat to determine whether these efforts would address the factor A threat. *See* 16 U.S.C. § 1533(a)(1)(D) ("inadequacy of existing regulatory mechanisms" may be a factor supporting "endangered species" determination); *id.* § 1533(b)(1)(A) (determination shall be made after taking into account efforts, if any, being made by any state to protect the species). Specifically, the Service considered the effects of active and ongoing conservation efforts in New Mexico and Texas. *See* Final Rule, 89 Fed. Reg. at 43762-64. This consideration was "critical" to the Final Rule's determination that the species was at risk of extinction. Declaration of Leston Jacks ("Jacks Decl.") ¶ 10.

Based on the Service's consideration of "all current and projected future impacts of conservation efforts" on the species' status, the Service concluded that "the risk of extinction for the dunes sagebrush lizard is high despite these efforts." Final Rule, 89 Fed. Reg at 43750. While acknowledging that conservation agreements in New Mexico and Texas provided and continued to provide benefits for the species, "these conservation agreements have not eliminated the loss of dunes sagebrush lizard habitat" and "development continues in close proximity to duneland habitat." *Id.*

The Service reasoned that habitat loss from oil and gas development is "effectively permanent" because, "[e]ven if a well pad is completely reclaimed, the sand dunes are lost until long-term geologic processes that take centuries and even millennia to occur can recreate the dunes." *Id.* at 43755; *see also id.* at 43761 (habitat loss "may be irreversible"). The Service observed that dunelands, once disturbed, tend to shift to other habitat types. *Id.* at 43761. Moreover,

habitat restoration attempts had been unsuccessful at a large scale. *Id.* at 43755-56 ("[T]o date, there have been no successful efforts to recreate lost habitat."); *see also id.* at 43757 (explaining that two recent studies did not support finding that shinnery oak restoration was possible at a large scale or within the dunes sagebrush lizard's range in New Mexico or Texas). The Service concluded that habitat "cannot currently be restored." *Id.* at 43766. The Service did not address the potential applicability of smaller-scale restoration attempts.

Ultimately, based on its review of what it then believed to be the "best available scientific and commercial information," the Service determined that the dunes sagebrush lizard met the ESA's definition of an "endangered species." *Id.* at 43766; *see also* 16 U.S.C. § 1532(6) (defining "endangered species" as a species "in danger of extinction throughout all or a significant portion of its range").

### B. Procedural History

In September 2024, Plaintiff filed the instant suit against Defendants, alleging that the Final Rule violated the ESA and the APA. Dkt. No. 1 at 24-25 (citing the ESA at 16 U.S.C. § 1533(b)(1)(A) and the APA at 5 U.S.C. § 706(2)(A), (D)). Specifically, Plaintiff alleged that the Service failed to consider the best available scientific and commercial data; failed to consider existing conservation efforts being made by states or political subdivisions; made arbitrary assumptions about the species' status, in part by relying on outdated habitat information; failed to apply the agency's own Policy for Evaluation of Conservation Efforts When Making Listing Decisions, 68 Fed. Reg. 15100, 15113 (Mar. 28, 2003), which provides direction on how to consider conservation agreements and other formalized efforts that have not yet been implemented or have not yet demonstrated they are effective at the time of a listing decision; and failed to

adequately specify the activities that will not be considered likely to result in a prohibited "take"[2] of the species. Dkt. No. 1 ¶¶ 79-80, 82-83, and 84. Plaintiff requested as relief that the Court vacate the Final Rule. *Id.* at 25.

Defendants filed their Answer in November 2024, denying that they violated the ESA, the APA, or any other law. Dkt. No. 7 at 18. The Parties then engaged in litigation pursuant to the court-ordered schedule. For example, Defendants provided Plaintiff with a provisional administrative record (Dkt. No. 23 at 1) and Plaintiff identified to Defendants their issues regarding it (Dkt. No. 24 at 1).

In July 2025, the Parties requested a stay because they were "exploring, in good faith, their options for resolving this case without further litigation" and a stay would "allow them to focus on exploring these options and to avoid potentially unnecessary expenditures of time and effort" and "avoid expending the Court's resources with potentially unnecessary filings." Dkt. No. 25 at 2. The Court granted the stay and granted subsequent joint requests from the Parties to continue the stay to allow time to continue and conclude settlement discussions. *See* July 7, 2025, Text-only Order; Dkt. Nos. 27, 29, 33 36, 38. Currently, the case is stayed through June 3, 2026. Dkt. No.40.

Over the past ten months, the Parties discussed possible settlement terms, exchanged proposals and settlement language, and independently conferred with their respective clients. The settlement that the Parties have agreed to is memorialized in the attached Agreement.[3]

## C. The Service's Error on Habitat Restoration

---

[2] Under the ESA, "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

[3] The Parties also note that the Center for Biological Diversity moved to intervene as an intervenor-defendant in March 2025 (Dkt. No. 18), and the Court denied its motion in November 2025 (Dkt. No. 30). The Center for Biological Diversity is thus not a party in this case nor involved in the proposed settlement.

The Service has since re-evaluated Plaintiff's claims and the bases for the Final Rule. Based on its re-evaluation, the Service concluded that it "failed to properly consider shinnery oak-duneland habitat restoration in its analysis supporting the listing determination" in the Final Rule. Jacks Decl. ¶ 5. The Service based its determination that the dunes sagebrush lizard is an endangered species on an incomplete evaluation of habitat restoration efforts, which "discounted experimental efforts at habitat improvement that showed promise for habitat restoration efforts." *Id.* ¶ 13. The Service thus "improperly assumed that habitat restoration would not happen." *Id.*

In the Final Rule, the Service relied on studies indicating that shinnery oak restoration in dunelands were unlikely to be successful and on the lack of general information about the shinnery oak's ecology and restoration. *Id.* ¶ 14. The Service was aware that restoration "has not currently been achieved at a scale meaningful to dunes sagebrush lizard populations." *Id.* But the Service failed to adequately consider "the wider lens of arid and duneland restoration work as a potential surrogate example for the shinnery oak system" and a habitat restoration attempt "on a small scale on oil and gas wellpads in New Mexico" that could potentially apply. *Id.* The error "led to an incomplete and potentially inaccurate assessment of the potential and ongoing conservation efforts in New Mexico and Texas." *Id.* ¶ 15. Given the Final Rule's reliance on the assumed inability to restore habitat, the Service's "potentially inaccurate assessment of the conservation efforts could impact the Service's conclusions that habitat loss was a potential permanent impact on the species and thus its listing evaluation." *Id.* ¶ 16.

### D.  Terms of the Settlement Agreement

Under the Agreement, the Final Rule would be vacated and remanded to the Service for reconsideration. Agreement ¶ 1(a). The Service would issue a new finding on the dunes sagebrush lizard's status. *Id.* ¶ 2. As stated in the Agreement and as detailed above, the Service concedes that

its evaluation of habitat restoration for the dunes sagebrush lizard in the Final Rule was incomplete and, therefore, potentially inaccurate. *Id.* at 2. The Agreement does not pre-determine the outcome of the Service's reconsideration and preserves the full extent of the Service's discretion in its reconsideration. *Id.* ¶ 3. The Service's new finding, which the Service anticipates completing within 24 months of entry of the Agreement, could be any of the three determinations authorized by the ESA: (a) listing as an endangered or threatened species is warranted, (b) listing is not warranted, or (c) listing is warranted but precluded from immediate action. *Id.* at 2, ¶ 2; *see also* 16 U.S.C. § 1533(b)(3)(B). Aside from the error regarding habitat restoration, the Service makes no admission of liability and no admission regarding the validity of Plaintiff's claims. *See* Agreement ¶ 5.

The Agreement would dismiss Plaintiff's claims with prejudice and close the case. *Id.* ¶ 1(b). Moreover, Plaintiff agrees to release any claims for attorney fees and costs in this case. *Id.* ¶ 4. Accordingly, the Agreement would fully resolve this case without further litigation. Until the Service's new finding is published in the Federal Register, the Court retains jurisdiction to oversee compliance with the terms of the Agreement, resolve any motions to modify or enforce the terms, or resolve disputes between the Parties arising out of or relating to the Agreement. *Id.* ¶ 11. The Agreement preserves Plaintiff's right to challenge the Service's new finding regarding the dunes sagebrush lizard's status through a new lawsuit in the future. *Id.* ¶¶ 5, 11.

### E.  LEGAL STANDARD

In evaluating a proposed settlement, the court must "undertake an analysis of the facts and the law relevant to the proposed compromise." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (mere boilerplate approval will not suffice). The court should approve the settlement if it finds that the settlement is "fair, adequate and reasonable and is not the product of collusion

between the parties." *Id.*; *see also United States v. City of New Orleans*, 731 F.3d 434, 439 (5th Cir. 2013). In determining fairness, adequacy, and reasonableness, the court should focus upon the terms of the settlement and how the terms compare to the likely relief the plaintiff would receive following a successful ruling on the merits. *See Cotton*, 559 F.2d at 1330. The court may rely upon the judgment of experienced counsel for the parties. Absent fraud, collusion, or the like, the court should be "hesitant to substitute its own judgment for that of counsel['s]." *Id.* (citation omitted). The court must approve or reject the settlement in its entirety, and may not delete, modify, or substitute provisions for its own. *Id.* at 1331-32.

### F.  ARGUMENT

The Agreement is fair, adequate, and reasonable considering the fundamental error underlying the Final Rule. As an initial matter, the Agreement is the outcome of a procedurally fair process. Experienced counsel with knowledge about the merits of this case and about environmental law engaged in arm's-length negotiations to reach mutually agreeable terms. Counsel for Plaintiff (from the state of Texas's Office of the Attorney General) and counsel for Defendants (from the U.S. Department of Justice) exchanged and revised settlement proposals, counterproposals, and draft language. The Agreement was approved by the appropriate state and federal government officials with settlement authority. The supporting Jacks declaration describes the error made by the Service in good faith. There is no suggestion of any fraud, collusion, or the like that impugns the procedural fairness of the settlement. *See Cotton*, 559 F.2d at 1330 (the court "is entitled to rely upon the judgment of experienced counsel for the parties" (citation omitted)).

In terms of substance, the primary relief—vacatur and remand of the Final Rule—is a fair, adequate, and reasonable outcome given the seriousness of the error identified by the Service. In

the Fifth Circuit, vacatur is the presumptive remedy for a flawed agency action.[4] *E.g.*, *Tex. Corn Producers v. EPA*, 141 F.4th 687, 710 (5th Cir. 2025); *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802, 815 (5th Cir. 2024); *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (*en banc*), *aff'd*, 602 U.S. 406 (2024); *Data Mktg P'ship v. U.S. Dept. of Labor*, 45 F.4th 846, 859 (5th Cir. 2022). Vacatur is warranted where agency action suffers from "fundamental substantive defects" or for which "there is serious doubt over the substantive correctness of the agency action at issue." *Chamber of Com. v. SEC*, 88 F.4th 1115, 1118 n.2 (5th Cir. 2023). In this case, Plaintiff seeks vacatur of the Final Rule to remedy the alleged violations. Dkt. No. 1 at 25.

Here, the Service has identified a serious error, which necessitates reconsidering the prior determination: failure to consider the possibility of habitat restoration of shinnery oak dunelands and a potentially inaccurate assessment of conservation efforts. The Service's incomplete consideration also does not reflect an accurate evaluation of the ESA's statutory factors, in particular factor A: "the present or threatened destruction, modification, or curtailment of its habitat or range." 16 U.S.C. § 1533(a)(1)(A). This is a serious error, as consideration of the effects of conservation efforts was "critical to the determination that the dunes sagebrush lizard was at risk of extinction," Jacks Decl. ¶ 10, meaning the Service's flawed consideration underlies the determination at the heart of the Final Rule. Moreover, it is well established that a reviewing court may set aside an agency rule as arbitrary and capricious when the agency "failed to consider an important aspect of the problem." *Motor Vehicles Ass'n*, 463 U.S. at 43. Therefore, if the Parties

---

[4] Defendants acknowledge that binding Fifth Circuit precedent provides for vacatur, and thus do not pursue in this case the United States' general position that "set aside" under the APA refers to party-specific relief, and not vacatur of a rule as a whole. The State maintains that the APA clearly provides for vacatur as a remedy and that Defendants' position is inconsistent with established precedent under the APA.

JOINT MOTION TO ENTER STIPULATED SETTLEMENT AGREEMENT

continued to litigate and the Service conceded its error at summary judgment, vacatur of the Final Rule would be the presumptive remedy.[5] *E.g.*, *Nat'l Ass'n of Mfrs.*, 105 F.4th at 815.

Remand alone would not adequately remedy the Service's identified error and is "justifiable only in rare cases satisfying two conditions." *Tex. Corn Producers*, 141 F.4th at 710 (quoting *Chamber of Com.*, 88 F.4th at 1118) (quotation omitted). First, there must be "at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022) (quoting *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021) (external quotations omitted)). Second, vacating the agency action would produce "disruptive consequences." *Tex. Corn Producers*, 141 F.4th at 710-11 (quoting *Chamber of Com.*, 88 F.4th at 1118). Here, because the endangered listing was premised on habitat considerations, the failure to consider the full extent of possible future habitat restoration and a potentially inaccurate assessment of conservation measures that may also serve to remedy habitat fragmentation and loss, the error renders the Service's entire analysis inadequate. Because the Service potentially misapplied facts relevant to the statutory listing factors on which it based the endangered listing, maintaining the dunes sagebrush lizard's "endangered species" status is factually *and* legally unjustifiable at this time.

---

[5] Despite the Service's admission of error, the Parties do not request any determination by the Court on the merits of the claims except to the extent that the Service concedes that it acted unlawfully. Agreement at 3. According to the Fifth Circuit, "[i]t cannot be overemphasized that" the court's role in approving the settlement does not include "the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton*, 559 F.2d at 1330. Moreover, a court may disregard a plaintiff's remaining arguments based on a prior determination that the challenged agency action violated the APA. *See Nat'l Ass'n of Priv. Fund Managers v. SEC*, No. 24-cv-00250-O, 2024 WL 4858589, at *8 (N.D. Tex. Nov. 21, 2024) (declining to consider remaining arguments after having ruled the agency action exceeded statutory authority); *Texas v. Equal Emp. Opportunity Comm'n*, No. 24-CV-173-Z, 2025 WL 1414332, at *13 (N.D. Tex. May 15, 2025) (declining to consider remaining arguments after having held the agency action was unlawful).

Consequently, the Service cannot say that it "will be able to substantiate its decision" on remand. *Texas*, 50 F.4th at 529 (citation omitted). Until the Service re-evaluates the best available scientific and commercial data regarding habitat restoration, the Service cannot determine that the species is "endangered because of habitat loss, fragmentation, or degradation." Agreement at 2; Jacks Decl. ¶¶ 8-9 (summarizing the Service's reliance on habitat loss, fragmentation, and degradation as the basis for listing). The Service's potentially inaccurate assessment "could impact the Service's conclusions that habitat loss was a potential permanent impact on the species and thus its listing evaluation." Jacks Decl. ¶ 16.

For these reasons, a settlement that does not provide for vacatur would unfairly impose far-reaching consequences on individuals and on private and governmental entities as a result of the Service's error. An "endangered species" listing carries substantial legal and real-world consequences, such as making it illegal for a person to harm, kill, or capture the species; spurring work by the Service on a recovery plan; making the states of New Mexico and Texas eligible for federal funds to promote the protection or recovery of the species; and imposing obligations for federal agencies to consult with the Service about actions they carry out that may affect the species. *See* Final Rule, 89 Fed. Reg. at 43766-67. Because it is unknown whether the Service could, in light of the identified error, justify the determination made in the Final Rule, vacatur and remand are appropriate. *See Texas*, 50 F.4th at 529 (whether vacatur is warranted factors in "how likely the agency will be able to justify its decision on remand" (citation omitted)). Even in a case where the Service argued that there *was* a serious possibility that it could substantiate its listing decision on remand—which the Service is not doing here—the court ordered vacatur nonetheless because the Service had made improper assumptions affecting its entire evaluation of conservation efforts.

*Permian Basin Petrol. Ass'n Chaves Cnty. v. Dep't of Interior*, No. 14-CV-50, 2016 WL 4411550, at *3 (W.D. Tex. Feb. 29, 2016).

Following vacatur, the Service anticipates completing a new finding on the dunes sagebrush lizard's status within 24 months of entry of the Agreement as a court order. Agreement at 3; Jacks Decl. ¶ 18. The Service will open a 30-day public comment period to receive any new information; update its Species Status Assessment, which provides the "best available scientific information" and a "scientifically rigorous characterization of the species' current and future status[;]" and reach a new finding informed by the Species Status Assessment. Jacks Decl. ¶ 20. The settlement makes no predetermination about the outcome of the Service's re-evaluation and leaves intact the Service's discretion in making the new finding under the ESA, 16 U.S.C. § 1533(b)(3)(B). Agreement ¶ 3; Jacks Decl. ¶¶ 18, 20. Under 16 U.S.C. § 1533(b)(3)(B), the new finding may be that listing the dunes sagebrush lizard as an endangered or threatened species is: (a) warranted; (b) not warranted; or (c) warranted but precluded from immediate action. Agreement ¶ 2.

Vacatur and remand notwithstanding, there are ongoing conservation efforts by federal, state, and private entities for the benefit of the species that will continue while the Service undertakes its re-evaluation and regardless of the species' immediate listing status. Jacks Decl. ¶ 19; Agreement at 3. Four different voluntary conservation programs, which have been in place since before the Final Rule, span the species' range in New Mexico and Texas. Jacks Decl. ¶ 19. They are intended to directly minimize threats to the species and its habitat and aim to advance habitat restoration. *Id.* (majority of programs attempt to minimize, mitigate, or offset new or existing habitat loss, degradation, or fragmentation). Furthermore, the Final Rule has only been in

effect since May 2024, so vacatur at this relatively early point is preferable to vacatur after months of litigation. *See Texas*, 50 F.4th at 530 (considering disruptive consequences of vacatur).

Finally, the Agreement achieves finality between the Parties at an early stage of litigation, serving the goal of concluding actions efficiently. *Cotton*, 559 F.2d at 1331 ("[S]ettlements contribute greatly to the efficient utilization of our scarce judicial resources."). Effecting vacatur and remand now through a settlement between the Parties—rather than after motions practice about the administrative record, summary judgment briefing, and a ruling on the merits of all of the Parties' claims and defenses—is a reasonable outcome of this action. *See id.* at 1330 ("The settlement terms should be compared with the likely rewards the [plaintiffs] would have received following a successful trial of the case."). Under similar circumstances where the government confessed to an error that caused it to be unable to explain or defend a rule, the court granted the government's request for voluntary vacatur. *Texas v. EPA*, 122 F.4th 1008, 1009 (5th Cir. 2024) (per curiam). So too here, the Court may grant the Parties' request for a settlement that vacates and remands the Final Rule. It would be unfair and inefficient to require the Parties to expend judicial and government resources on litigation when the Service admits to a serious error warranting vacatur and remand. *See Permian Basin Petrol. Ass'n v. Dep't of Interior*, 127 F. Supp. 3d 700, 712, 723 (W.D. Tex. 2015) (ordering vacatur of Service's final listing rule as the remedy for Service's arbitrary and capricious assumption that negatively affected critical findings). The settlement also avoids further expense of judicial and government resources by providing that Plaintiff releases any claims for attorney fees and costs in this matter, thus avoiding possible litigation between the Parties about these claims. In consideration of all the settlement terms, the Court should approve the settlement as fair, adequate, and reasonable.

## G.  CONCLUSION

For the reasons above, the Parties respectfully request that the Court resolve this case by entering the Agreement as an order of the Court.

Dated: June 3, 2026                        Respectfully submitted,

ADAM R.F. GUSTAFSON, Principal Deputy
    Assistant Attorney General
NICOLE M. SMITH, Assistant Section Chief

*/s/ Caitlyn F. Cook*
CAITLYN F. COOK, Trial Attorney
Md. Bar No. 2112140244
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
Tel:    (202) 598-7775
Email: Caitlyn.cook@usdoj.gov

JUSTIN R. SIMMONS
United States Attorney

By: */s/ Natashia D. Hines*
NATASHIA D. HINES
Assistant United States Attorney
Florida State Bar No. 89072
700 E. San Antonio Ave., Ste. 200
El Paso, Texas 79901
Office: (915) 534-6555
Fax: (915) 534-3490
Email: Natashia.Hines@usdoj.gov

***Attorneys for Defendants***

KEN PAXTON, Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOINT MOTION TO ENTER STIPULATED SETTLEMENT AGREEMENT
17

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

*/s/ Clayton Smith*
CLAYTON SMITH
Assistant Attorney General
State Bar No. 24091234
Clayton.Smith@oag.texas.gov

CLAUDIA GUTIERREZ
Assistant Attorney General
State Bar No. 24140101
Claudia.Gutierrez@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
Environmental Protection Division
P. O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel:    (512) 970-9855
Fax:    (512) 320-0911

**Counsel for State of Texas, Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2026, I electronically filed the foregoing Joint Motion to Enter Stipulated Settlement Agreement with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to:

Clayton Smith
Claudia Gutierrez
Office of the Attorney General
Environmental Protection Division
P. O. Box 12548, MC-066
Austin, Texas 78711-2548
*Attorneys for Plaintiff*

*/s/ Caitlyn F. Cook*
Caitlyn F. Cook
U.S. Department of Justice
*Attorney for Defendants*